UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

In the Matter of the Complaint of
Everglades Island Boat Tours, LLC as
owner of the 2004 20' airboat, with
hull    identification    no.
FLZBB218E404, for exoneration from
or limitation of liability,

                    Petitioner,

                         Case No.  2:06-cv-225-FtM-29SPC

_____

### OPINION AND ORDER

_____This matter comes before the Court on petitioner's Motion to Strike Claim for Loss of Consortium (Doc. #22), filed on September 20, 2006.  Claimants Jonell and Robert Modys filed an Opposition (Doc. #23) on October 6, 2006.  Petitioner then filed a Reply (Doc. #24), Notice of Filing Executed Affidavit of William Anderson (Doc. #25), and Notice of Filing and Request for Judicial Notice of Map for the Purpose of Determining Navigability (Doc. #26).  On March 28, 2007, the Court entered an Order (Doc. #31) providing claimants the opportunity to file a surreply.  On April 9, 2007, claimants filed a Surreply (Doc. #32) and Request for Judicial Notice (Doc. #33).  On April 20, 2007, petitioner filed an Opposition to Claimant's Request for Judicial Notice (Doc. #35).

### I.

The Complaint for Exoneration From or Limitation of Liability (the Complaint) (Doc. #1) alleges the following:  Everglades Island Boat Tours, LLC (Petitioner or Everglades) is the sole owner of a

twenty-foot airboat with Hull Identification No. FLZBB218E404.  On December 19, 2005, the airboat was being operated "in the navigable waters of Collier County, Florida" while engaged in the normal business of a sightseeing airboat tour when a passenger, Jonell Modys, was allegedly injured in an accident aboard the airboat. (Doc. #1, ¶ 5.)  Petitioner filed its Complaint for Exoneration From or Limitation of Liability (Doc. #1) on May 3, 2006, pursuant to 46 U.S.C. § 181 *et seq.*[1]  After an Ad Interim Stipulation for Value was approved and notice to claimants issued, Jonell and Robert Modys filed an Answer, Affirmative Defenses, and Claim (Doc. #17).  Included was claim number 7 for loss of companionship/ consortium.

## II.

Petitioner seeks to strike Robert Modys' seventh claim for loss of companionship/consortium because federal admiralty law does not recognize such a claim.[2]  Claimants argue that the entire case

---

[1]The statute was recently amended and re-codified at 46 U.S.C. §30501 *et seq.*

[2]While captioned as a motion to strike, the Court treats the motion as one to dismiss a claim and applies the motion to dismiss standard to the motion.  A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001)(en banc).  To satisfy the pleading requirements of FED. R. CIV. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).  When a court considers a Rule 12(b)(1) dismissal of a case on a factual challenge to subject matter jurisdiction, (continued...)

must be dismissed for lack of federal jurisdiction, since the
accident did not occur in or on navigable waters, and if
jurisdiction does exist the motion to strike should be denied
because the airboat is not a vessel within the meaning of 46 U.S.C.
§ 183(a).

## A.  Jurisdiction:

Federal courts are courts of limited jurisdiction, and must be
able to identify a source of such jurisdiction in order to proceed
with an individual case.  The source of federal admiralty
jurisdiction is Article III, Section 2 of the United States
Constitution, which extends judicial power "to all Cases of
admiralty and maritime Jurisdiction."  Congress implemented this
jurisdiction grant through 28 U.S.C. § 1333(1), which provides that
federal district courts have exclusive original jurisdiction of
"[a]ny civil case of admiralty or maritime jurisdiction, saving to
suitors in all cases all other remedies to which they are otherwise
entitled."  A party seeking to invoke federal admiralty
jurisdiction over a tort claim must satisfy two conditions: (1)
location, i.e., that the tort occurred on navigable waters or an
injury suffered on land was caused by a vessel on navigable waters;

---

² (...continued)
the court may consider facts outside the pleadings such as
testimony and affidavits as long as the facts necessary to sustain
jurisdiction do not implicate the merits of plaintiff's cause of
action. Morrison v. Amway Corp., 323 F.3d 920, 924-25 (11th Cir.
2003); Goodman v. Sipos, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001).

and (2) connection with maritime activity, i.e., (a) that, after assessing the general features of the type of incident involved, the incident has a potentially disruptive impact on maritime commerce, and (b) that the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. Jerome B. Gruhart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995); Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 899-902 (11th Cir. 2004), cert. denied, 126 S. Ct. 548 (2005).

As a preliminary matter, claimants seek to have the Court take judicial notice of internet pages on sfwmd.gov[3] discussing the management of the Everglades Wetlands. The Court will take judicial notice of such information over petitioner's objections.

It is undisputed that the incident involved in this case took place on private property within the Florida Everglades. Claimants assert that Jonell Modys was ejected from the airboat when it struck dry land, either a mud flat or a sand bar. Claimants assert that the incident did not occur on "navigable waters" because deposition testimony establishes that during the dry season the area is sometimes dry. Claimants argue that such "wetlands" cannot be considered navigable waters for the purpose of invoking admiralty jurisdiction. The Court disagrees.

---

[3]The South Florida Water Management District website.

"Navigable waters" is not a defined term for jurisdictional purposes, and is one of those legal terms which can be problematic. Early on, however, the United States Supreme Court held that in the United States "the ebb and flow of the tide do not constitute the usual test, as in England, or any test at all of the navigability of waters." The Daniel Ball, 77 U.S. 557, 563 (1870). The Court, stating what has become referred to as the traditional understanding of the term, stated: "Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." Id. This traditional understanding of "navigable waters" is not the full extent of Congressional power, and in various statutes "navigable water" has been defined far more broadly (although it is not without limits). E.g., Rapanos v. United States, 126 S. Ct. 2208, 2220-2225 (2006).

The Court concludes that from the evidence thus far in the case that petitioner has established admiralty jurisdiction. The fact that there may be no water during the dry season, and therefore the area is not navigable at that time, is not determinative. The lack of navigability due to periodic dryness, like the lack of navigability due to periodic conditions up north, does not preclude the waters from being considered "navigable

waters" within the meaning of admiralty jurisdiction.   The
undisputed evidence is that the airboat was in fact operating in
this waterway.   Petitioner presents the Affidavit of William
Anderson, an airboat tour operator, which states in relevant part:

> . . . where the accident occurred is a body of water the
> local airboat captains have named 'Big Bay.'. . . To get
> to the Big Bay area, one travels through the dredged
> Edens Channel. [] Big Bay is an unmarked channel
> connected to the Barron River. Everglades Island airboat
> tours run on waterways connected to the Chokoloskee Bay
> and the Gulf of Mexico. [] During the airboat season,
> there will be approximately 40 boats from various airboat
> tour companies out traveling in the back country area and
> on the Barron River. [] The Barron River is a main way of
> travel for all vessels located in the Everglades City
> Marina and homes contiguous to her waters that access the
> Gulf of Mexico.

(Doc. #25-2.)  Also provided is an attached Collier County Property
Appraiser's Office map with the area of the accident circled.
(Doc. #25-3.)  As a result, the Court finds that both the locality
and nexus tests are met, and that maritime jurisdiction is present.

Claimants cite to In re Bridges Enters., No. 02-60270-CIV,
2003 U.S. Dist. LEXIS 24747, 2003 WL 23305261 (S.D. Fla. Oct. 14,
2003) and In re Katrina Canal Breaches Consol. Litig., No. 05-4182,
2007 U.S. Dist. LEXIS 23206, 2007 WL 763742 (E.D. La. Mar. 9, 2007)
for the proposition that wetlands in the Everglades are not
navigable waters.  The Court finds neither persuasive under the
circumstances of this case.

In Bridges, 2003 WL at *4, the accident occurred on a
"landlocked pathway of shallow water, navigable only by airboats."
The court found that "[t]here is no access to any other body of

water from this area, rendering interstate commerce impossible."
Id.  The court concluded that even if access to other bodies, use
by only airboats was insufficient to establish a connection with
interstate commerce.   Id.   In this case, the Big Bay clearly
connects to interstate waterways where area residents and other
persons can navigate through to the Gulf of Mexico.  See Foremost
Ins. Co. v. Richardson, 457 U.S. 668, 675-77 (1982); Sisson v.
Ruby, 497 U.S. 358, 365-367 (1990)(maritime commerce is not limited
to "commercial" vessels when considering traditional maritime
activity).  Therefore, the case is distinguishable.

In the unpublished case of In re Katrina, 2007 WL at *5, the
court stated that "wetlands are not navigable waters for the
purposes of invoking maritime jurisdiction."   Claimants fail to
note that this statement is preceded by the recognition that
wetlands can be "waters of the United States" under the Clean Water
Act; and immediately followed by the clarification that "[a] party
seeking to invoke federal admiralty jurisdiction over a tort claim
must satisfy conditions of both location and connection with
maritime activity."  In re Katrina, 2007 WL at *4, *5.  It is clear
that the statement that wetlands are not navigable for
jurisdictional purposes was not meant to be construed as a
conclusion that because wetlands are present, maritime jurisdiction
cannot exist.  In this case, the map clearly reflect navigable
waters surrounded by the Everglades and wetlands but with navigable
waters.

**B.  Airboat as a "Vessel":**

Claimants argue that an airboat does not qualify as a vessel under 46 U.S.C. App. § 183.  Section 115 of Title 46 defines "vessel" as having the meaning provided by Section 3 of Title 1, which states that a vessel "includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water."  1 U.S.C. § 3.[4] See e.g., Keys Jet Ski, Inc. v. Kays, 893 F.2d 1225, 1230 (11th Cir. 1990)(finding a jet ski is a "vessel"); Bunge Corp.  v. Freeport Marine Repair, Inc. 240 F.3d 919, 925 n.7 (11th Cir. 2001)(adopting broad approach).  An airboat easily qualifies within the broad statutory definition of "vessel."

**C.  Loss of Companionship/Consortium:**

If, and only if, admiralty jurisdiction exists, then federal maritime law will be applicable.  Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 23-24 (2004).  Here, the Court has found the existence of admiralty jurisdiction, and therefore federal maritime law applies.  Under federal maritime law, claim number 7 must be dismissed for failure to state a claim.  The Eleventh Circuit Court of Appeals has stated  "neither the Jones Act nor general maritime law authorizes recovery for loss of society or consortium in personal injury cases."  Lollie v. Brown Marine Serv., 995 F.2d 1565, 1565 (11th Cir. 1993)(per curiam).  "Unless or until the

---

[4]This definition is recognized by claimants but rejected as contrary to legislative intent.

United States Supreme Court should decide to add state remedies to the admiralty remedies for personal injury, personal injury claimants have no claim for nonpecuniary damages such as loss of society, loss of consortium or punitive damages, except in exceptional circumstances such as willful failure to furnish maintenance and cure to a seaman, intentional denial of a vessel owner to furnish a seaworthy vessel to a seaman and in those very rare situations of intentional wrongdoing." <u>Altosino v. Warrior & Gulf Navigation Co. (In re Amtrak "Sunset Ltd." Train Crash in Bayou Canot)</u>, 121 F.3d 1421, 1429 (11th Cir. 1997), <u>cert. denied</u>, 522 U.S. 1110 (1998).

Accordingly, it is now

**ORDERED**:

1. Petitioner's Motion to Strike Claim for Loss of Consortium (Doc. #22) is **GRANTED** and the claim for loss of companionship/consortium is **dismissed**.

2. Claimants' Request for Judicial Notice of Publications From South Florida Water Management District and National Parks Conservation Association Concerning Everglades (Doc. #33) is **GRANTED**.

**DONE AND ORDERED** at Fort Myers, Florida, this ___23rd___ day of April, 2007.

JOHN E. STEELE
United States District Judge

Copies: Counsel of record

-9-